IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

ELIZABETH BROYLES,                    )
                                      )
        Plaintiff,                    )
                                      )
v.                                    )    No. 2:08-cv-30
                                      )
CVS PHARMACY, INC.,                   )
                                      )
        Defendant.                    )

# MEMORANDUM OPINION

This diversity case is before the court on the defendant's motion and memorandum for summary judgment [docs. 10 and 11]. The plaintiff has responded [docs. 17 and 18], and the defendant has filed a reply brief [doc. 19]. The court finds that oral argument on the motion is not necessary, and the motion is ripe for the court's consideration. For the reasons discussed below, the defendant's motion will be granted.

In her complaint, the plaintiff alleges that her supervisor "set her up" for termination by allowing her to use coupons in violation of company policy. She contends that her supervisor did not like her because she reported him and another worker to the company's ethics hot line. She also contends that the company defamed her by informing others of her illegal coupon use. The plaintiff

alleges state law claims for outrageous conduct, defamation, wrongful discharge, and retaliatory discharge, all of which entitle her to both compensatory and punitive damages.

## Factual Background

The plaintiff was hired by defendant CVS Pharmacy, Inc. in 1999, and at the time of the incident leading to this lawsuit, she was a cashier. When she was hired and during her employment, she received training in register operations, acceptance of coupons, and availability of the ethics hot line, among other responsibilities. In 2003, Anthony Charles Gilmer was hired as the plaintiff's store manager, and Cassie Gray was hired as a part-time shift supervisor. Soon thereafter the plaintiff says that an "improper relationship" developed between Gilmer and Gray. The plaintiff called the ethics hot line and reported the relationship, alleging that Gilmer and Gray were embezzling money from CVS because they were being paid but doing no work. The plaintiff believes that nothing was ever done to correct the situation.

In September 2006, a customer of the store insisted that the plaintiff honor her numerous coupons, some of which were outdated and not valid. The plaintiff asked Gilmer what she should do, and after he checked with his supervisors he advised her to go ahead and take the coupons. The plaintiff claims that Gilmer told her that as far as he was concerned, if a customer could use invalid coupons anyone could, and this included store employees. Gilmer

2

denies telling the plaintiff she could misuse coupons if a customer could do it. The plaintiff and another employee began using coupons in violation of company policy. In February 2007, CVS management accused the plaintiff and the other employee of improper use of coupons. Stephen DeNeale, the Area Manager for CVS, and Sam West, CVS's Loss Prevention Manager, made the decision to terminate the two employees. DeNeale stated in his deposition that the plaintiff and the other employee were fired only because of their misuse of coupons and that it would not have made any difference if they had claimed that Gilmer told them they could misuse them. It was still fraud and a violation of company policy.

Both employees admitted the conduct, were fired for coupon fraud, and were made to sign promissory notes for the value of the improperly used coupons (plaintiff owed $221.61). An attorney in Massachusetts was retained by CVS to collect the amount due.

## Legal Discussion

Under Rule 56 of the Federal Rules of Civil Procedure, a motion for summary judgment should be granted, "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." As the Supreme Court stated in *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986), this "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party

3

who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Thus, the moving party's burden may be discharged by showing that there is an absence of evidence to support the non-moving party's case. *Id.* at 325. In order for a non-moving party to defeat a motion for summary judgment, the non-moving party must come forward with persuasive evidence to support his or her claim or demonstrate that there is a genuine material factual dispute; that is, the non-moving party must produce evidence on which the jury could reasonably find for the non-moving party. *Id.* at 324.

1. <u>Plaintiff's wrongful and retaliatory discharge claims</u>

The defendant argues that the plaintiff's common law wrongful/retaliatory discharge claims must be dismissed as a matter of law. In Tennessee, the elements of a retaliatory discharge claim are:

> (1) that an employment-at-will relationship existed; (2) that the employee was discharged; (3) that the reason for the discharge was that the employee attempted to exercise a statutory or constitutional right, or for any other reason which violates a clear public policy evidenced by an unambiguous constitutional statutory, or regulatory provision; and (4) that a substantial factor in the employer's decision to discharge the employee was the employee's exercise of protected rights or compliance with clear public policy.

*Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 862 (Tenn. 2002). In this case, there is no dispute that the plaintiff was an at-will employee and she was

4

discharged, so the first two elements have been met. The defendant, however, argues that the plaintiff cannot establish the other two elements.

Tennessee recognizes that there are "limited circumstances [when] certain well-defined, unambiguous principles of public policy confer upon employees implicit rights which must not be circumscribed or chilled by the potential of termination." *Id.* at 858 (quoting *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716-17 (Tenn. 1997)). In the case before this court, the plaintiff's only allegation related to any protected activity was her report of Gilmer's and Gray's "inappropriate relationship" in 2003, four years before her termination in 2007.[1] The court has not been advised of any case law that would support a finding that complaining about a workplace affair, even if one describes it as "embezzlement," is a complaint about a matter of public policy or an exercise of one's statutory or constitutional rights. *See, e.g.*, *Collins v. AmSouth Bank*, 241 S.W.3d 879, 885 (Tenn. Ct. App. 2007) ("Persons asserting either a statutory or common-law whistleblowing claim must prove more than that their employer violated a law or regulation. They must prove that their efforts to bring to light an illegal or unsafe practice furthered an important public policy interest."). Further, any claim that Gilmer gave her permission to improperly use the coupons to "set

---

[1] There is an allegation in the complaint that the plaintiff also called the ethics hot line in 2005 to complain about a comment she overheard Gilmer make about wanting to get rid of employees who had been working in the store for awhile. However, in her affidavit attached to her response to the motion for summary judgment, the plaintiff does not mention this call as being a basis for her retaliatory discharge claim.

5

her up" does not meet the requirements of this element. The plaintiff knew the procedures for using and accepting coupons and she admitted that she knew that her coupon use was in violation of company policy.

Concerning the last element, the plaintiff has not come forward with any proof sufficient to raise a genuine issue of material fact that her phone call to the ethics hot line had anything to do with her discharge. "Temporal proximity of the adverse action to the complaint, a pattern of antagonism following a complaint, or other circumstantial evidence supporting causation are all relevant to a determination of causation." *Allen v. McPhee*, 240 S.W.3d 803, 822-23 (Tenn. 2007). The plaintiff admits that her complaint about the affair to the ethics hot line was in 2003, but she was not discharged until February 2007. The court finds that the time between the complaint and the adverse action is too attenuated to raise any inference of causation.

Further, the plaintiff has not shown that she was treated more harshly during the four years following her complaint. Other than a 2005 incident when Ms. Gray allegedly tried to place the blame on plaintiff for some missing money and her complaints about Gilmer set out below, there are no other incidents of harsh treatment described in the plaintiff's complaint, affidavit or deposition. She received fairly regular pay increases, and there are no bad evaluations in the record. Gilmer stated in his deposition that she was a good employee.

6

The court finds that there are no genuine disputes of material facts in this case. Other than her own supposition, the plaintiff has not come forward with any evidence that she was fired for a reason other than coupon fraud. She admitted using coupons in violation of company policy, and even if DeNeale and West had known about her claim that Gilmer "set her up," it would not have made a difference. The plaintiff has failed to show that she was discharged because of a protected activity and that any action she took was a substantial factor in the company's decision to termination her employment. The court finds that the defendant is entitled to judgment as a matter of law on the plaintiff's wrongful/retaliatory discharge claims.

2. Plaintiff's Outrageous Conduct Claim

The defendant contends that the plaintiff's outrageous conduct claim is meritless. Tennessee recognizes the tort of outrageous conduct and requires that the plaintiff establish three essential elements in order to prevail on such a claim: "(1) the conduct complained of must be intentional and reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury." *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). "[L]iability for mental distress damages clearly 'does not extend to mere insults, indignities, threats, annoyances, petty oppression or other trivialities.'" *Id.* (quoting *Medlin v. Allied Inv. Co.*, 398 S.W.2d 270, 274 (Tenn. 1966)).

7

When asked at her deposition about her claim for outrageous conduct, the plaintiff identified several actions which she contends support her claim:

– Gilmer "grilled" her about why work wasn't done
– Gilmer raised his voice when he was angry
– Gilmer had his fist clinched once and was standing in her face
– Gilmer flirted with some of the girls who worked there
– Gilmer touched her arm once
– Gilmer required her to do work that was not her responsibility
– Gilmer required the employees to work long hours, especially at inventory time, sometimes as long as six hours without a lunch break

The court finds that none of these actions rise to the level of outrageous conduct, but are more like the "indignities" and "petty oppressions" which the Tennessee Supreme Court does not recognize as outrageous conduct.

In her response to the motion for summary judgment, the plaintiff also argues that her outrageous conduct claim is based on her claim that Gilmer "set her up" by giving her permission to misuse the coupons because she reported him on the ethics hot line, and then initiated her termination. The court finds that even if Gilmer told the plaintiff that she could misuse the coupons to "set her up," a fact that Gilmer denies, the plaintiff knew that her actions were in violation of company policy. No one forced her to commit coupon fraud.

The court finds that the defendant is entitled to summary judgment on the plaintiff's outrageous conduct claim.

8

### 3. Plaintiff's Defamation Claim

During her deposition, the plaintiff stated that her defamation claim was based on an allegedly false oral statement by Gilmer to others, perhaps DeNeale and West, that he did not give the plaintiff permission to misuse the coupons. Under Tennessee law, a plaintiff must commence a suit for slander within six months "after the words were uttered." Tenn. Code Ann. § 28-3-103. If Gilmer made any such slanderous statements, they would have been made prior to the termination of the plaintiff's employment in February 2007. This lawsuit was filed on October 10, 2007, well beyond the six month limitations period. Thus, if the plaintiff's defamation claim is based on Gilmer's statements, it is time barred.

However, in her response, the plaintiff submits that her defamation claim is based on her allegation that CVS "published" her written statement that she committed coupon fraud.[2] The statement was written on February 8, 2007, the day of her termination. A month or so after her employment was terminated, the plaintiff received a letter from a collection attorney advising her that she owed CVS the amount she took as a result of her misuse of coupons. The plaintiff submits that CVS must have provided the collection attorney with a copy of her statement "in reckless disregard of the truth." As a written statement, the

---

[2] The defendant correctly argues that this allegation should be disregarded because it was raised for the first time in her responsive brief, citing *Penny v. UPS*, 128 F.3d 408, 415 (6th Cir. 1997).

limitations period is one year.  *See West v. Media Gen. Convergence, Inc.*, 53 S.W.3d 640, 648 (Tenn. 2001) (suggesting that written false light claims are subject to the one-year statute of limitations found in Tenn. Code Ann. § 28-3-104).

The defendant argues that the plaintiff's allegations do not establish a claim for defamation.  To establish a case of defamation in Tennessee, a plaintiff must establish that: "(1) a party published a statement; (2) with knowledge that the statement is false and defaming to the other; or (3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement."  *Sullivan v. Baptist Mem'l Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999).  The plaintiff must prove that a false statement about her was published by CVS to a third party.  The problem for the plaintiff in this case is, of course, that the statement that was published to the collection lawyer was the plaintiff's own written statement which she signed as "true."  Whether Gilmer is telling the truth  about not telling the plaintiff that she could misuse the coupons cannot be a basis for a defamation claim by the plaintiff.

Therefore, the plaintiff's defamation claim must be dismissed.

## Conclusion

For the reasons stated above, the motion for summary judgment on all the plaintiff's claims will be granted and this civil action will be dismissed. An order reflecting this opinion will be entered.

ENTER:


      *s/ Leon Jordan*
United States District Judge

11